# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Daniel Levi Keener, | ) |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) |
| v. | ) |
| | ) |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security, | ) Case No.: 1:22-cv-00074 |
| | ) |
| Defendant. | ) |

The Plaintiff, Daniel Levi Keener ("Keener" or "claimant"), seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his Title II Disability Insurance Benefits ("DIB"). This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court is a *Motion for Remand* (Doc. No. 15) filed by Keener and a *Motion for Summary Judgment* (Doc. No. 17) filed by the Commissioner.

## I. BACKGROUND

Keener filed an application for Disability Insurance Benefits on April 10, 2019, with an alleged disability onset date of November 10, 2018. (Doc. No. 13-5 at 22). Keener had a date last insured of December 31, 2023. (Doc. No. 13-7 at 8). Keener's application was denied upon its initial review on August 12, 2019, and again upon reconsideration on October 24, 2019. (Doc. No. 13-4 at 4-7, 9-11). On November 19, 2019, Keener requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 12-13). A hearing was held on September 16, 2020, with ALJ Christel Ambuehl presiding. (Doc. No. 13-3 at 32). Keener was represented by Anthony Mannella and Morgan Zavadil, with attorney Zavadil representing him at the hearing. (Doc. No. 13-6 at 10; Doc. No. 13-3 at 32). Vocational Expert Kent Granat appeared telephonically. (Doc. No. 13-3 at 32). On October 8, 2020, the ALJ issued a decision finding Keener not disabled. (*Id.* at 18).

Keener filed a request for review to the Appeals Council on November 24, 2020. (Doc. No. 13-6 at 11-14). On March 4, 2022, the Appeals Council denied Keener's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Doc. No. 13-2 at 2-8). On May 4, 2022, Keener filed a Complaint in this court seeking review of the Commissioner's decision. (Doc. No. 4).

At the time of the alleged onset disability date, Keener was 50 years of age. (Doc. No. 13-3 at 34). At the time of the hearing, Keener was 52 years of age. (*Id.*). Keener has a high school education and has worked in various capacities as a truck driver. (*Id.* at 35-37).

## II.  LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

In determining whether an individual has a disability under the Social Security Act, the Commissioner follows a five-step sequential process. *See* 20 C.F.R. § 404.1520(a). The five steps include (1) a consideration of claimants work activity and whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment meeting the duration requirement of § 404.1509; (3) whether the claimant's

impairment meets or is equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) a consideration of claimant's residual functional capacity and whether the claimant can return to their past relevant work; and (5) an assessment of claimant's residual functional capacity, age, education, and work experience to determine whether claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Upon reviewing the record, the court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022). "Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court must consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial fact finder. *Id.*

## III. DISCUSSION

The ALJ applied the five-step evaluation to determine whether Keener was disabled. First, the ALJ found Keener had not engaged in substantial gainful activity since November 10, 2018, the alleged onset disability date. (Doc. No. 13-3 at 9). Second, the ALJ determined Keener had the following severe impairments: osteoarthritis and traumatic arthritis, left ankle; status post-bilateral hip arthroplasties; osteoarthritis, right knee; type II diabetes mellitus; obesity; dermatochalasis, bilateral eyes, status-post bilateral blepharoplasty; brow ptosis, bilateral eyes, status post-bilateral browpexy; loss of visual acuity; hypertension; and dilated cardiomyopathy with left concentric hypertrophy. (*Id.*). Third, the ALJ concluded Keener did not have an impairment or combination thereof meeting or medically equal to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 10). Fourth, the ALJ found Keener had the residual functional capacity to perform light work as defined under 20 C.F.R. 404.1567(b). Specifically,

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk 2 hours in an 8-hour work day, sit 6 hours in an 8-hour work day. The claimant has no limitations on push and pull except for the limitations in lifting and carrying. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl. The claimant would need to use his right eye for visual tasks and has normal visual acuity using the right eye. The claimant cannot do work that requires peripheral vision on the left side. The claimant can have no exposure to hazards. The claimant can have only occasional exposure to atmospheric conditions, as defined in the SCO.

(*Id.* at 11). Keener was also found unable to perform any past relevant work. (*Id.* at 16). Fifth, the ALJ considered Keener's age, education, work experience, and residual functional capacity ("RFC"), and determined jobs existed in significant numbers in the national economy which Keener could perform. (*Id.* at 17).

4

Keener now alleges that (1) the ALJ's own findings require a determination of disability under the Agency's Medical-Vocational rules; and (2) the ALJ and Appeals Council were not properly appointed and so had no legal authority to adjudicate this matter.

### A. Disability Determination under Medical-Vocational Rules

Keener argues that Agency policy requires a finding of disability. Specifically, he points to the ALJ's determination that Keener could stand/walk for 2 hours in an 8-hour workday, which he argues the ALJ mischaracterized as "light" RFC. (Doc. No. 16 at 5).

The Social Security Administration distinguishes between sedentary work and light work when determining physical exertion requirements in the national economy.

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see also Titles II & XVI: Determining Capability to Do Other Work— The Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) [hereinafter SSR 83-10] (further defining sedentary work and explaining that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); *see also* SRR 83-10, 1983 WL 31251, at *6 (explaining that "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full

5

range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping.").

The ALJ characterized Keener as having the RFC to "perform light work as defined in 20 CFR 404.1567(b) except that he is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk 2 hours in an 8-hour work day, sit 6 hours in an 8-hour work day." (Doc. No. 13-3 at 11). While Keener argues the ALJ was inconsistent and contradictory in its RFC finding, he misinterprets the ALJ's findings. A full range of light work requires standing/walking approximately 6 hours in an 8-hour workday, while here, the ALJ found Keener has the RFC to perform light work *with limitations*. Courts in this circuit have found "that a two hour standing or walking limitation is consistent with the definition of a reduced range of light work." *Torres v. Berryhill*, No. CV 15-4416 (JRT/TNL), 2017 WL 1194198, at *3 (D. Minn. Mar. 30, 2017) (citing cases). Accordingly, even though the ALJ determined Keener was limited in terms of his ability to stand/walk, it is not mischaracterized as light work under the RFC.

Additionally, Keener asserts that the occupations identified by the Vocational Expert ("VE") are sedentary jobs rather than light, putting forth the argument that light work requires frequent lifting and carrying, and while few seated jobs are classified as light work, they require pushing and pulling of the arm-hand or leg-foot controls, and the "occupations identified by the VE in this case are not occupations which involve pushing and pulling of arm-hand or leg-foot controls." (Doc. No. 16 at 6).

"When a [vocational expert] or [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about

6

any possible conflict between that [vocational expert] or [vocational specialist] evidence and information provided in the [Dictionary of Occupational Titles]." *Pol'y Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). If evidence presents a conflict, the adjudicator is responsible for obtaining a reasonable explanation for the conflict and resolving the conflict prior to relying on the evidence in determining whether a claimant is disabled or not disabled. *Id.* The adjudicator must explain how the conflict is resolved in the decision. *Id.* "When VE testimony conflicts with the DOT, the DOT controls when the DOT classifications are not rebutted. The DOT classifications may be rebutted with VE testimony which demonstrates specific jobs whether classified as light or sedentary, may be ones that a claimant can perform." *Aaker v. Saul*, No. 3:18-CV-147, 2019 WL 4899661, at *4 (D.N.D. Aug. 19, 2019) (quoting *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010)).

Here, the VE testified to Keener's ability to perform the light work requirements of an electrode cleaner (DOT# 729.687-014), circuit board assembler (DOT# 726.687-038), and electronic inspector (DOT# 727.687-066) with a standing/walking limitation of 2 hours in an 8-hour workday. (Doc. No. 13-3 at 17-18). He also acknowledged there was a sit/stand option for the three jobs identified and testified they would permit reduced standing/walking. (*Id.* at 52). When questioned by the ALJ whether the limitations were consistent with the DOT and SCO, the VE testified that a job with a reduced standing/walking designation of 2-hours in an 8-hour workday may receive a light designation in a one of three ways: "[i]t can be for the weight, up to 20 pounds. It can be standing for up to six hours. And it can actually also be for repetitive hand movement. *And in this case, this is a seated light job where people are lifting 20 pounds, but they're working in a seated capacity*." (*Id*. at 51-52) (emphasis added); *cf. Aaker,* 2019 WL

7

4899661, at *5 (finding the VE failed to testify the identified jobs would permit standing/walking reduced hours in an 8-hour workday and neither the ALJ nor VE acknowledged conflict between the VE's testimony and DOT). Because the VE demonstrated that the occupations could be performed by Keener under a light work classification, the ALJ did not commit legal error.

Keener also argues that an award of benefits is required under the Programs Operations Manual System ("POMS"). (Doc. No. 16 at 9). Specifically, Keener asserts that under Agency policy he has a standing/walking capacity consistent with sedentary work rather than light work, and the ALJ failed to explain why one Grid rule was applied over the other when his RFC fell between two rules directing opposite conclusions. Keener further asserts that he falls between rule 202.14, which directs a finding of not disabled under light work, and rule 201.14, which directs a finding of disabled under sedentary work. (*Id.*).

When external capacity falls between two rules which reach differing conclusions, POMS states:

> Determining whether a claimant is disabled is a more difficult judgment when their exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:
>
> - higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or
> - lower-number rule and find the claimant disabled if you conclude the claimant has significantly reduced capacity for the higher level of exertion.
>
> **NOTE:** Use the information about the sedentary, light, and medium occupational bases found in the Medical-Vocational Quick Reference Guide in DI 25001.001 to assist you with this adjudicative judgment. You may also use or cite information from SSR 83-10, 83-12, 83-14, and 96-9p to support your judgment.
>
> **IMPORTANT:** Always explain the basis of your conclusions.
>
> If necessary, use the assistance of a Vocational Specialist to determine which rule most closely approximates the claimant's RFC and vocational factors of age, education, and past work experience.

8

POM DI 25025.015(D). When a claimant's exertional capacity falls somewhere "in the middle" of regulatory criteria when the Grid rules dictate two different conclusions, an ALJ should use a vocational resource. *Titles II & XVI: Capacity to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Exertional Limitations Within A Range of Work or Between Ranges of Work*, SSR 83-12, 1983 WL 31253 at *2-3 (S.S.A. Jan. 1, 1983). Non-exertional restrictions may further limit a claimant's ability to do a full range of work at any exertional capacity. *Titles II & XVI: Capability to Do Other Work–The Medical-Vocational Rules As A Framework for Evaluating A Combination of Exertional & Nonexertional Impairments*, SSR 83-14, 1983 WL 31254 at *4-6 (S.S.A. Jan. 1, 1983).

Keener's limitations fall between sedentary work (stand/walk 2 hours in an 8-hour workday) and light work (lifting 20 pounds), which puts his exertional capacity in the middle of two Grid rules. As Keener falls between two rules, the ALJ properly consulted a vocational source. *See* SSR 83-12, 1983 WL 31253, at *3.

Additionally, Keener argues remand is warranted due to the ALJ failing to explain why one Grid rule was used over the other when POMS DI 25025.015(D) requires the ALJ to always explain the basis of their conclusions. However, here the ALJ properly provided an explanation for Keener's inability to perform the full range of light work due to additional limitations. The ALJ determined:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work performance, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative conditions.

9

(Doc. No. 13-3 at 17). The ALJ also considered the VE's testimony, finding it consistent with the DOT, as supplemented by the VE's experience. (*Id.* at 18). The ALJ then determined Keener could adjust to work existing in significant numbers in the national economy based on his age, education, work experience and RFC, thus rendering Keener not disabled. (*Id.*); *see also Esping v. Berryhill*, No. CV 17-872 FLN, 2018 WL 3383433, at *7 (D. Minn. July 11, 2018) (finding the ALJ complied with POMS DI 25025.015(D) as claimant could perform light work occupations, the VE's explanations were reasonable and consistent with the DOT, and work existed in significant numbers within the national economy). Therefore, the ALJ properly complied with POMS DI 25025.015(D).

### B. Appointment of Administrative Law Judge and Administrative Appeals Judges

Keener contends the Social Security Administration Administrative Law Judge ("ALJ"), and Administrative Appeals Judges ("AAJs") employed at the Appeals Council, were not properly appointed by former Acting Commissioner Nancy Berryhill ("Berryhill") nor by any subsequent Commissioner or Acting Commissioner consistent with the provisions of the Federal Vacancies Reform Act ("FVRA").

During the pendency of this matter, the Eighth Circuit Court of Appeals addressed the above-stated issue in *Dahle v. Kijakazi*, holding Berryhill was properly appointed as the Acting Commissioner when she ratified the appointments of the ALJs and AAJs on July 16, 2018. *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023), *cert. denied sub nom. Dahle v. O'Malley*, 144 S. Ct. 549, 217 L. Ed. 2d 293 (2024); *see also* SSR 19-1P, 2019 WL 1324866, *2 (Mar. 15, 2019). Accordingly, the court is bound by the precedent set by the Eighth Circuit and cannot overturn or reverse their ruling. *See Joshua G. v. Kijakazi*, No. 22-CV-91-LRR-MAR, 2023 WL 6279534, at *13 (N.D. Iowa July 26, 2023).

### IV.     CONCLUSION

After considering the record as a whole, it is **RECOMMENDED** that Keener's *Motion for Remand* (Doc. No. 15) be **DENIED**, the Commissioner's *Motion for Summary Judgment* (Doc. No. 17) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

### NOTICE OF THE RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civ. L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 10th day of September, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court